VIRGIL SMITH v. THE STATE.

No. 14459. Delivered June 17, 1931.

The opinion states the case.

*John R. Francis,* of Houston, for appellant.

*O'Brien Stevens,* Criminal District Attorney, and *E. T. Branch,* both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Offense, robbery; punishment, fifteen years in the penitentiary.

It was shown for the State that shortly after seven o'clock on the date of the alleged offense, complaining witness, Windham, was trying to procure a car and driver to take him to Humble, Texas, from Houston, after having cashed a check for $52, and after having asked the appellant in this case if he had change for a "twenty". One witness testified that

he saw appellant and the complaining witness get in a car together in Houston and drive off. The complaining witness testified that he had been drinking and on the road out of Houston, fell asleep; that he was suddenly awakened by the driver of the automobile hitting him over the head and throwing him out into the road and into a ditch; that he was robbed of the money he had in his pockets. He further testified that he made his way to a house, where he inquired as to a telephone; that he was directed to the house next door, and that later an ambulance came out and got him. He testified that the car he rode in on the night of the robbery was a Model A Ford with a commercial body; that they left on the trip to Humble about seven-thirty o'clock at night and that he was not in the car over ten or fifteen minutes. He could not positively identify the appellant as the driver of the car.

One witness, a Mrs. Cours, testified that she lived about four and a half miles out of Houston about a block off of the Humble road; that about eight or eight-thirty she heard a car drive up in front of her house; that she was expecting her husband and went to the door and looked out, without opening it; that she saw a man in a light suit and hat hit a bareheaded man, who was in the car with him and who appeared to be intoxicated, and throw him from the car into the road; that he left the man there and turned around and started towards Houston. She further testified that the injured man came to her door and asked for a telephone and that she directed him to the house next door, without opening her door, and that she could not tell whether he was bleeding or not. She testified that the injured man told her he had been robbed and thrown out of the car. She further testified that she went to the jail later and identified appellant as the man who was driving the car and threw complaining witness from the car. She identified him by "the left side of his face". She also testified that there was a light in the car and that she could plainly see the man who struck the other man and threw him out. She also identified appellant on the trial of this case.

The deputy sheriff testified that he got the key to appellant's car from him at the Five Brothers Cafe in Houston on the night of the robbery; that the car was a Ford truck with the name New Methods Cleaning Company or the New Way on it; that the key fit the car and he drove it. He further testified that appellant's clothes were bloody, that the car was bloody and that a jack in appellant's car was bloody and had hair corresponding to that of Windham, the complaining witness, on it. It is shown that appellant admitted to the deputy sheriff that the bloody car was one which he had been driving and that he was the only one who had driven it that night and that he had charge of it. A bloody newspaper in which the jack was wrapped was also found in the car. The deputy sheriff positively identified a coat bearing blood spots as the one worn by the appellant at the time he arrested him. To substantially the

same effect was the testimony of the state's witness R. R. Myers, an investigator in the district attorney's office, who with the deputy sheriff arrested appellant. Other witnesses agreed on the attire of the appellant on the night of the alleged offense.

Appellant did not testify in the case. His defense was that of an alibi.

By certain witnesses who worked in the Five Brothers Cafe it was shown that appellant was in said restaurant and drank several cups of coffee from between seven and eight o'clock until the time of his arrest, with the exception of about fifteen or twenty minutes. One witness testified that appellant left, saying he was going to see his girl, but that he returned in about fifteen minutes. Another witness testified that he took appellant in his, witness', car to see a girl who lived at 601 Polk Avenue in Houston and that appellant went in and stayed about ten minutes and that he was not with appellant more than fifteen or twenty minutes altogether. The girl and her aunt and uncle, with whom she lived at 601 Polk Avenue, testified that appellant called at their place, which was a lunch room, and remained ten or fifteen minutes and that he drank a cup of coffee. All of the witnesses testified that appellant had been drinking and that he was talking loud, and that they did not see him driving a Ford truck with a cleaner's sign on it. One witness testified that he had seen appellant drive a Ford truck before with a cleaner's sign on it and he thought it was the New Method Cleaners. It was shown that appellant had on a gray suit, but that he did not have on a coat. Employees of the restaurant testified that they did not see any blood on appellant's clothing when he returned to the restaurant. The girl upon whom he called testified that she believed the coat offered in evidence with blood spots on it was appllant's coat.

One witness testified that he heard complaining witness make the statement that the man who took him out the Humble road was a "big heavy set, dark complected, kind of woppish looking man, who wore a blue suit and a big white hat." Complaining witness testified that he did not recall making a statement to anyone that the man who slugged him was "a dark-complected person".

There is no complaint as to the admission or rejection of any evidence nor to the manner in which the issues were submitted to the jury. The sole question raised is as to the sufficiency of the evidence to support the conviction. The evidence of the state's witnesses in this case, if true, is sufficient to establish the guilt of the appellant. The credibility of the witnesses and the weight to be given to their testimony is within the province of the jury and where there is sufficient evidence on the part of the state to sustain a conviction, this court has never assumed the right to set aside a verdict because there might be evidence offered by the appellant conflicting therewith. See Lockhart v. State, 3 Texas App., 567; Turner

608

v. State, 37 Texas Crim. Rep., 451; Ray v. State, 84 Texas Crim. Rep., 262; Johnson v. State, 83 Texas Crim. Rep., 61.

Believing the evidence sufficient to support the verdict, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court